**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONNA RICH and MARK RICH,**
**Individually and as Husband and Wife,**

                                                    **Plaintiffs,**

          **vs.**                                                      **1:10-CV-1371**
                                                                        **(MAD/CFH)**

**TEE BAR CORP. and ROCKING HORSE RANCH**
**CORP.,**

                                                    **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

Rehfuss, Liguori & Associates, P.C.          John W. Liguori, Esq.
40 British American Blvd.
Latham, NY 12110
*Attorney for Plaintiffs*

Roemer Wallens Gold & Mineaux LLP          Matthew J. Kelly, Esq.
13 Columbia Circle
Albany, NY 12203
*Attorneys for Defendants*

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

          Plaintiffs commenced the within action against Tee Bar Corp. and Rocking Horse Ranch

Corp. ("defendants" or "Ranch") seeking monetary damages for pain and suffering and loss of

consortium as a result of an accident that occurred on February 6, 2009.   Plaintiffs allege that

defendants' negligence resulted in injury to plaintiff, Donna Rich.   Presently before the Court is

defendants' motion summary judgment and dismissal of plaintiffs' complaint pursuant to Fed. R.

Civ. P. 56.  In the alternative, defendants seek an order precluding plaintiffs from presenting

medical evidence at trial with respect to certain injuries that defendants claim were not causally related to the accident.  (Dkt. No. 28).  Plaintiffs opposed the motion and cross-moved for an order pursuant to Fed. R. Evid. 403 precluding certain evidence offered by defendants on the motion.  (Dkt. No. 31).  This court has jurisdiction pursuant to 28 U.S.C. § 1332.

## FACTS[1]

The facts in this case, unless otherwise noted, are undisputed.  Rocking Horse Ranch is a family-owned resort in Highland, New York that provides a variety of activities for guests including horseback riding, water activities, entertainment, skiing and snow tubing. Plaintiff, Donna Rich ("plaintiff" or "D. Rich"), went to the Rocking Horse Ranch with her husband, Mark Rich ("plaintiff" or "M. Rich") and their two children.  Plaintiffs checked in on February 6, 2010 and stayed until Sunday, February 8, 2010.

The ski area and tube run at the Ranch are inspected by the New York State Department of Labor.  The Ranch receives a permit from the State to operate the lift at the snow tube hill.  The snow tube hill has been in continuous operation at the Ranch since 1994 or 1995.  On a given day, approximately 1000 tubes will go down the snow tube hill.  The snow tubing hill at the Ranch consists of a single tow rope and either one or two lanes for snow tubers.  Guests hook their tubes to the tow rope and ride up the hill.  Guests then ride their tubes to the bottom.  Ranch employees assist with each step, including giving a "gentle" nudge in order to get the guests started down the hill.  Guests may ride in single tubes alone or in double tubes with another

---

[1] Defendants filed a Statement of Material Facts and plaintiffs properly responded. Plaintiffs also set forth additional facts.  Defendants have not responded to these additional assertions in the reply submission.  To the extent that the "facts" asserted by plaintiffs in the Statement of Material Facts are supported by the record, the Court will consider them in the context of the within motion.  The background set forth in this section is taken from: (1) defendants' Statements of Material Facts and plaintiff's responses therein; (2) the exhibits and evidence submitted by defendants in support of the motion for summary judgment; and (3) the exhibits and evidence submitted by plaintiffs in opposition to the motion for summary judgment. The facts recited are for the relevant time period as referenced in the complaint.

person.  The snow tube hill ends in a flat area covered with hay and then continues into a deceleration ramp - an uphill section designed to further slow riders.  "Willy bags" and hay bales are set up to "create a horseshoe for protection" around the deceleration ramp.[2]

Generally, because the speed of the tubes is affected by changeable conditions, the snow tube run is tested by the employees before it opens.  If tubers are traveling too far up the deceleration ramp, staff members will add additional deceleration mats - rubber mats used to slow the riders - and they will add additional hay at the base of the deceleration ramp, stretching it out so that tubers hit the hay sooner and slow down.  Ranch employees test both the single and double tubes before opening the snow tube hill to guests.[3]  Typically, the double tubes will go farther than the single tubes.   Generally, because the conditions are changeable, Ranch employees constantly monitor the distance guests are traveling, and they make adjustments to the hay and mats as needed, even after the hill has opened to guests.[4]

On the evening of February 6, 2010, plaintiff and her family went snow tubing at the Ranch.  The highest temperature was 26 degrees Fahrenheit with a low temperature of zero degrees Fahrenheit.[5]  Plaintiff knew that snow-tubing involved risks and that there were no brakes on the tube and that she was unable to steer the tube.  Plaintiff took approximately three or four trips down the hill with her daughter on a double tube.  Each time they would ride to the top of the hill using the tow rope.  An attendant at the top of the tow rope would unhook their tube after they climbed off of it, and they would wait in line for their turn to go down the hill.  Each time

---

[2] The parties disagree on whether Willy bags were in place on the evening of plaintiff's accident.

[3] The parties dispute whether these procedures were in place on the evening of plaintiff's accident.

[4] The parties dispute whether these procedures were in place on the evening of plaintiff's accident.

[5] *See* Affidavit of Paul F. Cooney, annexed to defendants' motion for summary judgment as Exhibit P.  The affidavit contains certified meteorological records from the National Climatic Data Center.  The parties do not object to the authenticity of those records.  The records will be considered by the Court on the within motion.

plaintiff rode down the hill with her daughter, she came to a complete stop on the hay at the bottom of the hill.  After taking three or four trips down the hill with her daughter, plaintiff switched to a single tube.  Plaintiff rode to the top of the hill in her single tube and found the same two attendants working at the top of the hill.  Plaintiff believed the attendants' names were "Tim" and "Sal".[6]  Plaintiff claims that the two attendants were talking to each other about trying to get tubers to strike the back of the wall at the end of the tube run.  Plaintiff claims that McDermott pushed a girl in a tube, and she went down the hill "at a good pace" and then stopped on the hay.

McDermott helped plaintiff's daughter into a tube and pushed her down the hill.  Plaintiff then got into her tube.  Plaintiff claims that, without warning, Frisher took the rope attached to her tube, ran her back towards the woods, then turned and ran her to the top of the hill and "flung" her down the hill.  McDermott does not remember the incident at all and denies ever seeing a coworker "fling" a tuber down the hill.  Frisher does not remember the incident and denies ever seeing anyone "fling" a tuber down the hill.  Plaintiff struck the barrier at the top of the deceleration ramp.  Amanda Odendahl ("Odendahl"), a Ranch employee,  was working at the snow tube hill on the evening of plaintiff's accident and testified that she, "remember[ed] a woman coming down and hitting the back of the wall, rolling out of her tube".   At the time of plaintiff's accident, the temperature was between 15 and 20 degrees Fahrenheit.

Ranch employees assisted plaintiff from the hill.  Jack Barnello ("Barnello"), a first aid provider and the manager on duty, examined plaintiff.  Barnello walked plaintiff to the ski shop area so that she could sit down.  They stayed in the ski shop area for approximately ten minutes, but plaintiff wanted to go back to her room to lie down.  Plaintiff returned to her room and Barnello brought another employee, a nurse, to check on plaintiff in her room.  Plaintiff

---

[6] The record indicates that the names were Tim McDermott ("McDermott") and Sal Frisher ("Frisher").

complained of a headache.  Barnello and the nurse suggested that plaintiff get checked at the

hospital, but plaintiff refused to go.  Barnello completed an accident report regarding the

incident.[7]  Plaintiff claims that she told Barnello that she was "flung" down the hill.  Barnello

denies the conversation.  The accident report indicates that the accident occurred at 8:00 p.m. at

the "bottom of tube run".  In the section of the report entitled "Description of Incident,

Statements, Witness(es), Address of Witness(es), Barnello wrote:

> Guest struck her head (left side) on the back wall of the tube run.  She
> was in a single tube, she was thrown into the back wall when tube hit
> the back wall.

Plaintiff did not receive any medical treatment that evening.  The next day, plaintiff skied

for an hour or two with her family.  While at the ski hill, plaintiff spoke with Anthony Riggio

("Riggio), the head of grounds at the Ranch, and claims that she told Riggio about the accident.

Riggio denied that plaintiff told him that she had been "flung" down the hill.   In the days after the

accident, plaintiff claims that she spoke with Stanley Ackerman, the Ranch's general manager.

However, the parties do not agree on the substance of that conversation.  M. Rich testified that

plaintiff told him that she was "flung" down the hill.  M. Rich did not see the accident occur and

did not discuss the accident with any Ranch employees.  Plaintiff took Advil and remained at the

Ranch for the weekend.

**DISCUSSION**

**I.      DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

[7] The report is annexed to defendants' motion as Exhibit "R".  Barnello identified the report during his
deposition and plaintiffs do not object to the admissibility of the report.  Accordingly, the Court will consider the
report in the context of the within motion.

**A.      Standard on Summary Judgment**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56 ( c ). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 258 (1986). A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See id.* If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id.*  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist*., 673 F.3d 84, 94 (2d Cir. 2012).

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir.1994). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the

6

non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F .3d 81, 86 (2d Cir.1996) (citing Fed.R.Civ.P. 56 ( c ).

In applying this standard, the court should not weigh evidence or assess the credibility of witnesses.  *Hayes v. New York City Dep't of Corr.*,  84 F.3d 614, 619 (2d Cir. 1996) (citation omitted).  Credibility determinations and choices between conflicting versions of the events are generally matters for a jury and not for the court on summary judgment. *Rule v. Brine*, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) (citing *inter alia Anderson*, 477 U.S. at 255).  While not argued by defendants, there is a very narrow exception to the rule as stated by the Second Circuit in *Jeffreys v. City of New York*, 426 F.3d 549, 553-55 (2d Cir. 2005).  In *Jeffreys*, the Second Circuit held that summary judgment may be awarded in the rare circumstance where there is nothing in the record to support plaintiff's allegations, other than his own contradictory and incomplete testimony, and even after drawing all inferences in the light most favorable to the plaintiff, the court determines that "no reasonable person" could believe the plaintiff's testimony. *Id*. at 554-55. In order for the *Jeffreys* exception to apply: (1) the plaintiff must rely "almost exclusively on her own testimony"; (2) the plaintiff's testimony must be contradictory or incomplete; and (3) the plaintiff's version of events must be contradicted by defense testimony.  *Jeffreys*, 426 F.3d at 554.

**B.     Assumption of the Risk**

Where jurisdiction is based upon diversity, the court must apply the substantive law of the forum state.  *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994); *see also Ascher*, 522 F.Supp.at 452 (E.D.N.Y. 2007) (citations omitted).  A person who elects to engage in a sport or recreational activity "consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation".  *Morgan v. State of New York*, 90 N.Y.2d 471, 484 (1997).  A participant "may be held to have consented to

those injury-causing events which are known, apparent and reasonably foreseeable". *Youmans v. Maple Ski Ridge, Inc*., 53 A.D.3d 957, 958 (3d Dep't 2008) (citations omitted).  However, a participant does not assume risks that are the result of reckless or intentional conduct, risks "concealed or unreasonably increased" or risks that result in a "dangerous condition over and above the usual dangers inherent in the activity."  *Morgan*, 90 N.Y.2d at 485; *Huneau v. Maple Ski Ridge, Inc*., 17 A.D.3d 848, 849 (3d Dep't 2005) (citations omitted).  "Generally, whether the plaintiff assumed a risk by participating in a sport is a question for the jury; dismissal of the complaint is appropriate only when the proof before the court reveals no triable issue of fact." *Samuels v. High Braes Refuge, Inc*.,  8 A.D.3d 1110, 1111 (4th Dep't 2004) (citations omitted).

Here, defendants claim that they satisfied their duty to make conditions safe.  Specifically, defendants assert that plaintiff was aware of the risks associated with snow tubing and that she rode down the hill three or four times before her accident occurred.  Defendants also allege that summary judgment is warranted because there is no evidence corroborating plaintiff's version of how the incident occurred.  Plaintiffs claim that defendants' employees engaged in reckless conduct.

Plaintiff testified that she rode down the hill three or four times on a double tube with her daughter.  However, her accident occurred during her first run down in a single tube.  Plaintiff testified that as she waited in line, "I heard one of the boys joking with the other about having people - - trying to get people to hit the wall".  (D. Rich EBT at p. 88-89).  Plaintiff explained that the "boys" were the two attendants at the top of the hill and believed their names were "Tim" and "Sal".  When plaintiff was ready to move down the hill, she claims that Sal:

> . . . took my rope, and he ran me back to the wooded line.  And then he turned, and ran me to the tope of the hill and kind of flung my tube down.

Id. at 94.

Plaintiff testified that Sal ran backwards, "more than five feet". *Id.* at 96. Plaintiff never saw Sal do this at any other time during the evening. Plaintiff also testified that the day after the incident, she told Jack Barnello, Anthony Riggio and Stanley Ackerman exactly how the accident occurred. *Id.* at 103-106. Plaintiff claims that Barnello told her that, "he knew something wasn't right because of the groups behavior after the tube". *Id.* at 112. Plaintiff also claims that Barnello told her that he, "addressed the boys, and that they had admitted to fooling around". *Id.* at 114. Plaintiff cannot identify any witnesses to her accident. *Id.* at 115.

The defense witnesses provide different accounts of the events that transpired during the weekend. In some instances, the testimony of the defense witnesses contradict each other. Frisher was deposed and testified that he never saw plaintiff prior to the date of his deposition and that he had no recollection of working on Friday, February 6, 2009. In fact, Mr. Frisher testified that "I'm usually off on a Friday and Saturday". In support of the within motion, McDermott provided an affidavit and states, "I do not have any specific memory of this incident". Riggio testified that "Sal and Tim were mentioned to me as the attendants at the time" but admitted that he knew that from reviewing plaintiff's deposition testimony. Moreover, Riggio, Ackerman and Barnello did not speak with Frisher or McDermott about the incident. Riggio stated he eventually spoke with Frisher but only after the lawsuit was commenced.

Riggio admitted that he had a brief conversation with plaintiffs in the presence of Stan Ackerman. However, Ackerman testified that he did not recall seeing plaintiff while she was at the facility. (Ackerman EBT at p. 13). According to Riggio, plaintiff never described how the accident occurred and the conversation involved how she was feeling and getting her daughter help on the rope tow. (Riggio EBT at p. 26). Riggio, Barnello and Ackerman testified that none

of the Ranch employees were disciplined as a result of the incident.  Ackerman stated that he did not recall telling plaintiff, in any subsequent telephone conversations, that the attendants on the snow tubing hill had been disciplined.  (Ackerman EBT at p.34).  Barnello testified that he completed an accident report but did not recall plaintiff ever telling him that she was "forcibly launched" down the hill.  (Barnello EBT at p. 24).

Defendants also contend that plaintiffs did not read warning signs at the facility. However, plaintiff testified that she had no recollection of any kind of signs that were present at the facility.  *See* D. Rich EBT at p. 72.  During plaintiff's deposition, she was shown photographs of signs and asked if she recalled seeing the signs at the Ranch.  Plaintiff testified, "No".   The photographs are not part of the record herein.[8]  Moreover, there is no evidence with respect to what was posted on the signs, where the signs were located and whether the signs were present at the Ranch on the day of plaintiff's accident.

Based upon the record, the parties and witnesses present varying accounts of the accident and thus, genuine issues of fact exist requiring a trial in this matter. The Court finds that this case does not fall within the narrow *Jeffreys* exception.  Plaintiff's testimony is not contrary or incomplete.  Moreover, plaintiff's testimony is not contradicted by reliable defense witnesses. Viewing the evidence in a light most favorable to plaintiffs, there are clear factual issues to be resolved by the jury including whether the attendants at the top of the hill unreasonably increased the risk of injury to plaintiff.  *See Huneau*, 17 A.D.3d at 849.

The Court has reviewed the cases cited by defendants in support of the within motion and finds them factually distinguishable from the matter herein.  In those cases, the plaintiffs

---

[8] The Court notes that there are photographs of signs annexed to Jim Engel's, plaintiffs' expert, affidavit. Mr. Engel reviewed the signs but does not state whether the signs were present on the day of plaintiff's accident or where they were located at the Ranch. Therefore, the photographs are not in competent, admissible evidence and will not be considered by this Court on the within motion.

described accidents with "foreseeable consequences" of snow tubing and did not prove that the defendants unreasonably enhanced the dangers. *See Youmans*, 53 A.D.3d at 959*; Berdecia v. County of Orange*, 15 Misc.3d 1102(A) (N.Y. Sup. 2006) (the plaintiff was "pushed" successfully on each of her three prior runs and voluntarily presented for a fourth run); *Tremblay v. W. Experience*, 296 A.D.2d 780 (3d Dep't 2002) (the risk of impacting the snow barrier was reasonably foreseeable).

## C.     Waiver

Defendants argue that summary judgment is appropriate because plaintiff signed an assumption of risk notification warning her of the risk of physical injury when using defendants' facility.  Plaintiff admits that she executed the waiver but contends that the waiver simply warned of weather-related conditions and changes in terrain and as such, plaintiff could not have assumed the risk of being launched down the run.[9]

An exculpatory agreement will be enforced when the language expresses in unequivocal terms the intention of the parties to relieve a defendant of liability for the defendant's negligence. *Walker v. Young Life Saranac Vill*., 2012 WL 5880682, at *6 (N.D.N.Y. 2012) (citations omitted).  "[T]he law frowns upon contracts intended to exculpate a party from the consequences of its own negligence".  *Id.* (citing *Gross v. Sweet*, 49 N.Y.2d 102, 106 (1979)).  "It must be plain and precise that the limitation of liability extends to negligence or the fault of the party attempting to shed its ordinary responsibility." *Id.* at *8.  Further, an agreement that attempts to exempt a party from grossly negligent acts is wholly void.  *Gross*, 49 N.Y.2d at 106.

---

[9] The form is attached to defendants' motion as Exhibit "S".  The document is not in competent, admissible form. However, plaintiffs do not dispute the authenticity of the document and thus, it will be considered by the Court on the motion.

11

On February 6, 2009, plaintiff executed a form entitled "Participants Responsibilities of Activities and Assumptions of Risk".   The form provides, *inter alia*:

> Guest acknowledges that participation in riding, water skiing and other sports and activities listed but not limited to those in brochure, and/or available at Rocking Horse Ranch Resort are used at participants own risk and guest is of legal age and will advise others in his/her parties in inherent risks in partaking of such activities.

*       *       *

> 3.      I acknowledge that ski area and riding trail conditions vary constantly because of weather and natural causes.   I also understand that ice, variations in terrain, moguls, rocks, forest growth, debris and other obstacles and hazards, including other participants exist throughout the property.   Therefore I acknowledge that participation in any sport or activity can be a hazardous activity and that I could suffer personal injury as a participant.

> I hereby expressly acknowledge my understanding and acceptance of the foregoing and agree to assume the risk of any personal injuries which I may incur during my use of the Rocking Horse Facilities.

The waiver makes no reference to "negligence" and does not mention the specific risks inherent in snow tubing.  Thus, the waiver is insufficient to protect defendants from liability for the subject occurrence.  Moreover, having never been made aware of the risks involved in the activity, claimant cannot be considered to have assumed them.  *Long v. State*, 158 A.D.2d 778, 780-781 (3d Dep't 1990).  Thus, summary judgment based upon the waiver of liability is not appropriate.

**D.      Proximate Cause**

Defendants also argues, in the alternative, that even assuming there is an issue of fact with respect to the assumption of the risk doctrine, defendants have demonstrated that being "flung" down the hill, in the manner plaintiff described, was not the proximate cause of the accident.

On February 11, 2012, at approximately 5:30 p.m., defendants conducted an experiment to determine the effects of being pushed and "flung" on the distance traveled at the snow tube hill. The highest temperature was 39 degrees Fahrenheit with a low temperature of 25 degrees Fahrenheit. At the time of the test runs, the temperature was approximately 28 degrees Fahrenheit. A Ranch employee who matched plaintiff's physical characteristics, weighing approximately 200 pounds and standing approximately 5 feet 2 inches tall, took nine runs down the snow tube hill. On the first three runs, the employee was not pushed at all. On the next three runs, the employee was given a hard push on his back. On the final three runs, the employee was pulled backwards by the strap and then "flung" down the hill.   In support of the motion, defendants offer the affidavit of Paul Engel, the owner of Sunburst Ski Area. Engel avers that he has engaged in "extensive analysis of the factors that affect speed and distance of snow-tubers". However, Engel does not assert, nor is there any evidence, that he was present during the experiments that were conducted in February 2012. Rather, he states that he reviewed the video footage taken that evening and that he "reached several conclusions based on that footage and the associated case information".

Plaintiffs' expert, Paul F. Cooney, performed a series of calculations that allegedly led to the conclusion that being pushed or flung would cause a snow tuber to travel farther down the hill. According to plaintiffs' expert's calculations, it was possible for a snow tuber to hit the wall if he or she was flung down the hill.

The Court is wary of awarding summary judgment where there are conflicting expert reports. *In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010); *Rand v. Volvo Fin. N. Am.*, 2007 WL 1351751, at *3 (E.D.N.Y. 2007) ("[i]t is not for the court to decide which expert opinion is more persuasive.").  "The conflicting opinions and statements of both parties' experts on material factual issues . . . can only be determined by a trial on the merits".  *Regent Ins. Co. v. Storm King Contracting, Inc.*, 2008 WL 563465, at *10 (S.D.N.Y. 2008).  It would be improper for the Court to engage in an evaluation of Engel's and Cooney's opinions.  The jury must make a determination regarding the credibility of all expert witnesses.  *See Scanner Techs. Corp. v. Icos Vision Sys. Corp.*, 253 F.Supp.2d 624, 634 (S.D.N.Y. 2003) ("The credibility of competing expert witnesses is a matter for the jury, and not a matter to be decided on summary judgment.").

## II.    DEFENDANTS' MOTION TO PRECLUDE

In the alternative, defendants argue that plaintiffs should be precluded from introducing evidence that plaintiff's herniations and surgeries were causally related to the accident at defendants' facility.[10]  Defendants rely upon the lack of contemporaneous treatment records and the opinions of John T. Rigney, M.D., a radiologist retained by defendants to review plaintiff's MRI films.  Plaintiffs' claim that the reports completed by plaintiff's treating providers and surgeon indicate that her injuries are related to the accident.

As discussed in Part II, conflicting expert opinions preclude summary judgment.  Moreover, evaluations of doctor's testimony should be addressed by the factfinder.  *Augustine v. Hee*, 161 F. App'x 77, 79 (2d Cir. 2005).  The conflict in the medical opinions of the parties' experts, is sufficient to raise an issue of material fact as to whether plaintiffs's herniations and

---

[10] On the motion, the parties present various "facts" with respect to plaintiff's medical treatment.  The Court will not recite these facts as they are irrelevant for the purposes of this motion.

14

surgeries were causally related to the accident; thus, the claims may not be dismissed on summary judgment. *See Shamanskaya v. Ma,* 2009 WL 2230709, at *7 (E.D.N.Y. 2009).  Defendants' motion to preclude plaintiffs from introducing evidence related to this issue at trial is denied.

## III.    PLAINTIFFS' CROSS MOTION

Plaintiffs cross move for an order precluding plaintiff from introducing the video of test runs from February 2011 on this motion.  Based upon this Court's decision above, plaintiffs' cross-motion is denied as moot.   Plaintiffs' motion specifically seeks to preclude this evidence from consideration on this motion.  The parties are advised that the Court takes no position on the admissibility of defendants' video of test runs at trial.

## CONCLUSION

It is hereby

**ORDERED**, that defendants motion for summary judgment and dismissal of plaintiffs' complaint in its entirety (Dkt. No. 28) is **DENIED**; it is further

**ORDERED** that defendants motion to preclude plaintiff from introducing evidence at trial that plaintiff's injuries were causally related to the accident (Dkt. No. 28) is **DENIED**; it is further

**ORDERED**, that plaintiffs' motion to preclude defendants from introducing the video of the February 2011 test runs as evidence in support of defendants' summary judgment motion (Dkt. No. 31) is **DENIED as moot.**

**ORDERED** that a Settlement Conference is scheduled in this matter for April 2, 2013 at 10:30 a.m. in Albany.  The parties are directed to appear at that time and make submissions in advance of the conference as directed in this Court's Order Setting Settlement Conference which will be forthcoming.

**IT IS SO ORDERED.**

Dated:  January 28, 2013
          Albany, New York

Mae A. D'Agostino
U.S. District Judge